Joshua W. Carden, SBN 021698
Joshua Carden Law Firm, P.C.
16427 North Scottsdale Road, Suite 410
Scottsdale, AZ 85254
joshua@cardenlawfirm.com
(480) 454-1100
(480) 454-1101 (Fax)
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thadeus J. Sosa,<br><br>                    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A., and Justin Martz,<br><br>                    Defendants. | **ORIGINAL COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

Plaintiff Thadeus J. Sosa, by and through the undersigned counsel, hereby seeks relief under Title VII and 42 U.S.C. § 1981, as follows:

### PARTIES

1.     Plaintiff Thadeus J. Sosa was at all relevant times herein a resident of Maricopa County, Arizona, and an "employee" of Wells Fargo Bank, N.A. for purposes of Title VII and Section 1981, and Justin Martz for purposes of Section 1981.

2.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a foreign corporation at all relevant times conducting its business in Maricopa County, Arizona.

3.     Wells Fargo was an "employer" of Plaintiff within the meaning of purposes of Title VII, 42 U.S.C § 2000e, *et. seq.*, and 42 U.S.C. § 1981, at all times material to this action.

4.     Defendant Justin Martz, is an individual resident of Maricopa County , Arizona, and was, at all relevant times, Mr. Sosa's supervisor and "employer" within the meaning of Section 1981 only.

5.     At all times pertinent to this Complaint, Wells Fargo's managerial employees were acting within the course and scope of their employment with Wells Fargo; and as a result thereof,



Wells Fargo is responsible and liability is imputed for the acts and omissions of its managerial employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

6.     All acts alleged in this Complaint occurred in Maricopa County, Arizona.

### JURISDICTION AND VENUE

7.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

8.     The unlawful employment practices described herein were committed within the State of Arizona, on Defendant's premises located in Maricopa County, State of Arizona.

9.     Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

### ALLEGATIONS COMMON TO ALL CLAIMS

10.     Wells Fargo is a national bank that employs well over 500 employees nationwide.

11.     Mr. Sosa is Hispanic in his national origin.

12.     Wells Fargo employed Mr. Sosa beginning in June 2016 at its 322 E. Ray Road, Gilbert, Arizona location.

13.     Mr. Sosa worked as a Personal and Business Banker Specialist.

14.     Mr. Sosa was one of seven Hispanics at that branch.

15.     In late 2018, Mr. Sosa began observing discriminatory treatment of other Hispanics, both employees and customers, at Wells Fargo.

16.     For example, Hispanic customers were not welcome to sit in the lounge area and were encouraged to leave, even if they were present for bank business or together with someone there on bank business.

17.     Justin Martz, District Manager for Wells Fargo, was instrumental in this mistreatment of Hispanics.

18.     Mr. Sosa was initially afraid to report this violation of the law because of observed retaliation and personal experience with retaliation.

19.     For example, Mr. Sosa's direct supervisor referred to the employee hotline as the "snitch line" and openly stated that there would be repercussions for anyone who reported her via that method.



20. Mr. Sosa reported that supervisor for infractions of company policy and that supervisor immediately wrote up Mr. Sosa in retaliation for that complaint.

21. In December 2018, Mr. Sosa learned from another manager that Justin Martz had used his District Manager position to sabotage multiple interviews and transfer requests (approximately 17) Mr. Sosa had made to improve his position within Wells Fargo.

22. Mr. Sosa confronted Mr. Martz and asked about those actions.

23. Mr. Martz refused to discuss the matter with Mr. Sosa.

24. Upon information and belief, Mr. Martz's actions were because of Mr. Sosa's national origin or in retaliation for his protected activity.

25. On or about December 14, 2018, Mr. Sosa overheard another employee "Mason" – an Assistant Manager – state "I hate Mexicans and I can't stand them" or words to that effect.

26. At least two other employees overheard Mason make that statement.

27. Mr. Sosa reported that statement to Justin Martz and Erin Bridges and informed Mr. Martz he was going to report that statement to Human Resources .

28. Mr. Sosa followed up with a direct report to Human Resources of Mason's statement.

29. Mr. Sosa's new direct supervisor Erin Bridges informed Mr. Sosa that Mason would no longer work at that branch.

30. Mason returned to work at that branch by December 20, 2018.

31.  On February 11, 2019, Mr. Martz, with Ms. Bridges present, unexpectedly terminated Mr. Sosa's employment.

32. They provided Mr. Sosa no reason for the termination.

33. Upon information and belief, Mr. Martz, as a Wells Fargo District Manager, had direct input into the decision to terminate Mr. Sosa.

34. On the way out the door, Ms. Bridges privately encouraged Mr. Sosa to "fight" his termination, noting that he had not been written up and had a good reputation there.

35. Mr. Sosa immediately filed a Dispute Review request with Wells Fargo Human Resources, but never received a response.



36.     After his termination, at least one additional Hispanic employee was terminated from Wells Fargo, also without a stated reason.

37.     Upon information and belief, the reasons for Mr. Sosa's termination was because of his Hispanic status, and/or his protected activity.

38.     Mr. Sosa immediately attempted to find new employment at another bank.

39.     He was a finalist for a position and even received a start date in May 2019, but after contacting Wells Fargo, the new bank informed Mr. Sosa that the offer was rescinded because Wells Fargo had coded him "not re-hirable."

40.     Upon information and belief, the reason Wells Fargo coded Mr. Sosa this way was because his national origin and/or his protected activity.

41.     But for Wells Fargo coding him this way, Mr. Sosa would have received the job at the new bank.

42.     The termination and subsequent difficulty in finding re-employment caused Mr. Sosa immense distress, including physical and emotional distress.

43.     Mr. Sosa sought medical treatment as a result of this distress.

44.     "Mason" the employee who made the discriminatory statement about Hispanics was recently promoted to Mr. Sosa's old branch, suffering apparently no punishment for his discriminatory statement.

**Administrative Remedy Exhaustion**

45.     Mr. Sosa formalized a Charge of Discrimination on June 17, 2019.  A true and correct copy of that document is attached as Exhibit A.

46.     Mr. Sosa received a notice of suit rights for the Charge from the EEOC dated June 29, 2019. A true and correct copy of that document is attached hereto as Exhibit B.

47.     This Complaint is brought prior to 90 days from the date Mr. Sosa received his right to sue letter.

48.     All conditions precedent to the filing of this lawsuit have occurred or been satisfied.



## FIRST CAUSE OF ACTION – TITLE VII DISCRIMINATION

### Wells Fargo only

49.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

50.    Plaintiff is a member of a protected class: Hispanic.

51.    As described above, Plaintiff was subject to unlawful discrimination in that he was held to a different standard than his non-Hispanic co-workers by his supervisors – disparate treatment because of his national origin.

52.    Plaintiff's termination was a fruit of the unlawful discrimination evidenced by Plaintiff's district manager.

53.    As a direct and proximate result of Wells Fargo's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

54.    As a direct and proximate result of Wells Fargo's conduct, Plaintiff has further sustained damages in the form of emotional distress and medical expenses.

55.    Wells Fargo's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## SECOND CAUSE OF ACTION – TITLE VII RETALIATION

### Wells Fargo only

56.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

57.    Plaintiff engaged in protected activity as described above.

58.    Plaintiff experienced adverse action for his protected activity – namely, the sabotage of his applications within Wells Fargo, the termination, and the subsequent coding of him as not rehireable.

59.    But for his protected activities, Plaintiff would not have received these adverse actions.

60.    As a direct and proximate result of Wells Fargo's conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

61.     As a direct and proximate result of Wells Fargo's conduct, Plaintiff has further sustained damages in the form of emotional distress and medical expenses.

62.     Wells Fargo's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

## THIRD CAUSE OF ACTION - RACED-BASED DISCRIMINATION IN VIOLATION OF 42 USC § 1981

### Both Defendants

63.     By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

64.     Plaintiff is a member of a non-white minority – Hispanic.

65.     Alternatively, Defendants perceived Plaintiff to be a member of a non-white minority – Hispanic – and treated Plaintiff differently based on that perception.

66.     Plaintiff's employment with Wells Fargo was contractual in nature.

67.     Both Defendants discriminated against Plaintiff based on his actual or perceived race in the performance, modification, and termination of his employment contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

68.     Specifically, Defendants gave less protection from discrimination to Plaintiff and heightened the standards and requirements placed upon him than those imposed on similarly-situated white individuals.

69.     Defendants' discrimination was intentional.

70.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

71.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

72.     Defendants' conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages against the Defendants.



## FOURTH CAUSE OF ACTION - RACED-BASED RETALIATION IN
## VIOLATION OF 42 USC § 1981
### Both Defendants

73.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

74.    Plaintiff is a member of a non-white minority – Hispanic.

75.    Alternatively, Defendants perceived Plaintiff to be a member of a non-white minority – Hispanic – and treated Plaintiff differently based on that perception.

76.    Plaintiff's employment with Wells Fargo was contractual in nature.

77.    Both Defendants retaliated against Plaintiff based on his protected activity of complaining about discriminatory actions by a co-worker based on his actual or perceived race.

78.    The retaliation directly impacted performance, modification, and termination of his employment contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

79.    Defendants' retaliation was intentional.

80.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of such wages and benefits into the future.

81.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained damages in the form of emotional distress, embarrassment, humiliation, loss of reputation, and loss of self-esteem.

82.    Defendants' conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages against the Defendants.

### JURY TRIAL DEMANDED

83.    Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A.    Declaring that the acts and practices complained of herein are in violation of federal



and/or state law;

B.     Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment or employment opportunities;

C.     Directing Defendants to place Plaintiff in the position he would have occupied but for Defendants' unlawful actions, and make him whole for all earnings he would have received but for Defendants' discriminatory treatment, including, but not limited to, back pay, front pay, pension, and other lost benefits;

D.     Awarding Plaintiff compensatory and punitive damages in an amount to be determined by the jury;

E.     Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein; and

F.     Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted on this 10th day of September, 2019,

Joshua Carden Law Firm, P.C.

By: s/Joshua W. Carden
Joshua W. Carden
*Attorneys for Plaintiff*
*Thadeus J. Sosa*

