**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thadeus J Sosa,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Wells Fargo Bank NA, et al.,<br><br>　　　　　Defendants. | No. CV-19-05129-PHX-DLR<br><br>**ORDER** |

At issue is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") summary judgment motion (Doc. 68), which is fully briefed and, for reasons explained below, denied.[1]

**I.　　Background**

For purposes of this order, the Court views the facts in the light most favorable to Plaintiff Thadeus Sosa. Sosa was employed by Wells Fargo as a personal banker from January 25, 2017, to February 11, 2019. In December 2018, Sosa reported to district managers Justin Martz and Erin Bridges that Mason Gist, a Wells Fargo service manager who filled in at the Gilbert branch while the branch manager was on leave, had made disparaging comments about Hispanics. Sosa alleges that Gist said, "I hate Mexicans and I can't stand them," or words to that effect.

---

[1] Oral argument is denied because the issues are adequately briefed, and oral argument will not aid the Court's decision-making. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

Sosa was terminated on February 11, 2019. The decision was made by Wells Fargo's Team Member Misconduct Review Committee ("Committee"). The Committee terminated Sosa because: (1) it found that in October 2018, Sosa had participated in a branch-wide sharing of computers and cash drawers for transaction processing in violation of company policy and (2) Sosa had received a prior corrective action for loss exposure occurring on July 16, 2018, as reflected in a written warning dated August 9, 2018.

Sosa concedes that those allegations against him were the basis for the Committee's decision to terminate him. However, he contends that the allegations are not true and, instead, are lies that Martz told the Committee. He contends that the Committee did not know that the allegations of his misconduct were fabricated by Martz, who did not like him.[2] Sosa contends that but for Martz's lies, which Martz communicated to the Committee for discriminatory and retaliatory reasons, the Committee would not have decided to terminate him. Sosa summarizes the "Martz lies" as follows:

1. As to the written warning dated August 9, 2018, Sosa contends that he had a meeting with Martz and branch manager Jennifer Isaac. He contends that after investigating the circumstances, Martz and Isaac announced at the conclusion of the meeting that Sosa had properly followed procedures and the warning would be expunged from his record. However, it was not expunged.

2. As to the October 2018 findings, Sosa contends that he did not engage in the branch-wide behavior that violated company policy. He claims that when questioned by Martz, instead of admitting that he engaged in the behavior, as Martz told the Committee, he denied it.

In 2018, Sosa applied for other jobs at other branches within Wells Fargo. When he did not receive a response to his applications, he asked Martz for assistance in learning

---

[2] Wells Fargo argues that the Court should not consider Sosa's evidence that Martz lied to the Committee because Sosa waited to disclose that evidence for the first time in response to the summary judgment motion. Wells Fargo argues that the timing violates the discovery rules and General Order 17-08. However, Wells Fargo has not moved to strike the contested evidence. The Court is not privy to all discovery known to the parties and without a motion on the issue, where all parties can present their positions, the Court is unable to find that a discovery violation warranting the exclusion of evidence occurred.

why his applications were being rejected. On August 9, 2018, Martz emailed a Wells Fargo recruiter, who responded that Sosa's applications were rejected because he failed to upload a resume and had not listed his current experience. When, by October 15, 2018, he had not received an answer from Martz about the problem with his applications, Sosa again emailed him. Martz responded the next day explaining the problem with his application that the recruiter described back in August. Sosa claims that Martz withheld information for those two months for discriminatory and retaliatory reasons in order to prevent him from obtaining the sought-after positions, and but for Martz's behavior he would have obtained one of the positions.

Based on these facts, Sosa claims that the Committee's decision to terminate him was because of his protected activity in reporting inappropriate conduct of a supervisor and/or because of his national origin. He also claims that Martz interfered with his efforts to secure another position within Wells Fargo in retaliation for his protected activity and/or because of his national origin.

## II.     Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific

facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**III.  Discussion**

    **A. Retaliation**

To make a prima facie case of retaliation, a plaintiff must present evidence showing: "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (citation and quotation marks omitted). A plaintiff must offer "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996) (citation, internal punctuation, and emphasis omitted). Retaliation claims require a "causation in fact," meaning they are governed by a "but-for" causation standard. *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Wells Fargo argues that Sosa cannot establish a prima facie case that his termination was retaliatory because he cannot produce evidence of a casual nexus between his protected activity and his termination. Wells Fargo's argument is premised on the position that only what the Committee, as the ultimate decisionmaker, knew or believed is relevant. However, in *Poland v. Chertoff,* 494 F.3d 1174 (9th Cir. 2007), the Ninth Circuit did not limit the inquiry to only the facts known or believed true by the decisionmaker. It also considered the influence of the supervisor who provided the decisionmaker with inaccurate information based on an improper bias. The Ninth Circuit found that such bias could be imputed to the decisionmaker:

> We hold that if a subordinate, in response to a plaintiff's protected activity, sets in motion a proceeding by an independent decisionmaker that leads to an adverse employment action, the subordinate's bias is imputed to the employer if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process. This

- 4 -

>standard is consistent with what we have suggested in previous Title VII retaliation cases, and with the law in a majority of the circuits.
>
>Thus, if an adverse employment action is the consequence of an entirely independent investigation by an employer, the animus of the retaliating employee is not imputed to the employer. Conversely, even if the biased subordinate was not the principal decisionmaker, the biased subordinate's retaliatory motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision.

*Id.* at 1182-83 (internal citations omitted).

Although the Committee did not know of his protected activity, Sosa has presented evidence that raises a question of fact as to whether Martz knew, and whether he presented false information to the Committee in retaliation for Sosa's protected activity. Sosa's evidence that Martz knew of the protected activity and lied to the Committee, and that the Committee decided to terminate Sosa in reliance on those lies, is sufficient to raise a question of fact as to causation.

Sosa correctly argues that the timing of his termination relative to his protected activity establishes a prima facia case for retaliation. A termination two months after protected activity is sufficient to meet the burden. Although Wells Fargo has articulated a legitimate nonretaliatory reason for the termination, the timing of the termination and Sosa's affidavit claiming that Martz's lied, knowing of Sosa's recent protected activity, raises a question of fact as to whether the reason given by Wells Fargo amounted to a mere a pretext for a Martz's alleged retaliatory motive.

**B. Discrimination**

The Court evaluates racial discrimination, like retaliation, in employment claims using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In a racial discrimination case, a plaintiff first must establish a prima facie case of discrimination by showing that he: (1) is a member of a protected class, (2) is qualified for his job, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside his protected class. If a plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts

to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for discrimination, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). A plaintiff's evidence on this point "must be both specific and substantial to overcome the legitimate reasons put forth by," the employer. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002).

Sosa claims that both his termination and Martz's efforts to hinder his advancement by withholding information on the process for applying for other positions within Wells Fargo are the products of discrimination. There is no dispute that Sosa is a member of a protected class and that his termination constitutes an adverse employment action. Wells Fargo argues, however, that Sosa cannot establish a prima facie case of racial discrimination because he cannot produce evidence that similarly situated employees outside his protected class were treated more favorably than him. Wells Fargo also argues that Sosa cannot produce specific and substantial evidence showing that he was terminated on account of his race, rather than because of the findings of the Committee that he had a history of violating loss exposure procedures. Wells Fargo's argument is again premised on the position that only what the decisionmakers knew or believed is relevant.

Circumstantial evidence of Martz's intent to discriminate, taken in the light most favorable to Sosa, includes evidence that Martz exhibited a dislike for Sosa that was recognized by another employee, that Martz lied to the Committee to get Sosa fired, that Martz withheld information from Sosa about the shortcomings of his job applications, that Martz apparently concurred with the decision not to impose an adverse consequence against Gist for his violation of Wells Fargo's discrimination and harassment policy, and that Martz ordered Sosa to clear the lobby of Hispanic customers. Sosa's evidence raises

a question of fact as to whether the legitimate, nondiscriminatory reason for the termination amounts to a pretext created by Martz when he provided false information about Sosa to the Committee that resulted in his termination.

### C. Punitive Damages

Wells Fargo seeks summary judgment on the availability of punitive damages, arguing that the facts alleged here are not sufficiently egregious. Citing Arizona law, Wells Fargo asserts that this is not one of the "most egregious cases where there is reprehensible conduct combined with an evil mind over and above that required for the commission of a tort." *Linthicum v. Nationwide Life Ins. Co*, 723 P.2d 675, 681 (Ariz. 1986). However, the standard for the recovery of punitive damages cited by Wells Fargo is the Arizona state law standard, a more stringent standard than that employed in federal claims for discrimination and retaliation. In the latter context, the Supreme Court has allowed punitive damages when the defendant acts "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999). Although egregious conduct could be evidence of an intentional violation of the law, it is not a necessary element. *Id.* at 535.

Evidence that Martz offered false information to the Committee to get Sosa fired is sufficient to meet the standard described in *Kolstad*. A question of fact exists as to the propriety of punitive damages.

**IT IS ORDERED** that Defendant's summary judgment motion (Doc. 68) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on **March 11, 2022, at 10:30 a.m.** before Judge Douglas L. Rayes. Call-in instructions will be provided via separate email.

Dated this 23rd day of February, 2022.

Douglas L. Rayes
United States District Judge

- 7 -